Our last case of the day is agenda number 10, number 128-170, People of the State of Illinois v. Oliver J. Hutt. Counsel, you're ready to proceed. May it please the Court. Counsel. My name is James Waller. I'm with the Office of the State Appellate Defender. It is my pleasure to represent Oliver Hutt before you today. Oliver is appealing both his DUI conviction and his conviction for obstruction of justice. With your permission, I'd like to discuss both cases briefly and answer any questions that I can. In the DUI case, Oliver's conviction should be reversed because he was denied his constitutional right to a jury trial, a right he never waived, and a right that was never waived on his behalf. In the obstruction case, his conviction should be overturned because his inaction did not fit the elements of obstruction of justice. But let's talk about the DUI case first, since that's the investigation that precipitated all of these events. In the DUI case, nobody, not Oliver Hutt, not his attorney, nobody ever executed a waiver of jury trial. On October 17, 2017, was the only time that any waiver of jury trial occurred in any of these cases, and the DUI case was never even called on that day. That's why the record citations to what happened on that day are all from the obstruction case, because no proceedings were held in 17DT51 on October 17th. The rest of the dates that Mr. Messonnier can argue about all involve trial counsel and the Court being wrong about what happened on October 17th. Counsel would later incorrectly and repeatedly advise the Court that Oliver had waived his jury trial on all of the cases on that day, and the Court relied on those representations denying him his right to a jury trial. This is not a case like People v. Fray. In People v. Fray, the -- Ginsburg-Cousins, did Mr. Hutt have an opportunity to speak up and say, no, I didn't waive my right on that particular case on the DUI? He did, Your Honor, speak up a couple of times saying that he wants his jury trial. The exact question of did you waive your right on the DUI case or I want my jury trial on the DUI case never came up. Defendants don't have to request their right for the jury trial. It has to be actively waived, actively given up. That right existed until he waived it, and he never did that. Later, there were discussions, because two other cases were waived. He waived his jury right on the obstruction case and on a complainant. Ginsburg-Cousins, I think my question is a little different. He had several charges pending, and he seemed to be aware of which cases were being called, and there was a lot of activity. But I don't – are you saying that he at one time said, no, I didn't waive my right? It seems to me that I don't remember him – I don't recall his saying clearly when the judge said, you know, you've waived your right, and even when his own lawyer said that, that he never said, no, I didn't. That's correct, Your Honor. He never said, I never waived my right on the DUI case. He never said, I never waived my right on the other cases either. That's accurate. Again, our position is that that right exists until he waives it. You can't – you can't retroactively manufacture an acquiescence to something that never happened. I guess my question is a little different. The – his own lawyer was saying that he waived his right. And does he have some obligation to say, no, I didn't? The – the burden is on the State to demonstrate a waiver of jury trial. We can't – we can't retroactively create a waiver that never occurred. So there was never – in People v. – excuse me, People v. Flay, there was an active acquiescence. The attorney said he's waiving his right to a jury trial. He didn't say anything. There's a contemporaneous acquiescence in that situation. In here, that never happened because in no time did his attorney say he's waiving his jury trial on the DUI. Later on, the attorney would incorrectly say he waived his jury trial on everything and he says, I want my jury trial back. But you can't retroactively infer the – the waiver of such a fundamental right like this. The waiver of jury trial is – it kind of stands out as far as a very important right that – I'm sorry. My question's a little different. I'm not talking about inferring. I'm talking about whether he had an obligation to speak up knowing that he hadn't waived that right. When his own lawyer said he waived his right and then the judge asked, did you waive your right, and he said yes, I'm asking, does he have some obligation to speak up or is it okay to remain silent and then later say it's an oops, oh, well, you know, you didn't – you didn't find out that I really didn't waive the right, so it's too late. I understand your question, I believe. And I apologize. The answer is no. He does not have an obligation to speak up and demand his right to a jury trial because that trial already exists. That right always already exists. He has to actively waive it. The burden is on the State to show a waiver of jury trial. And here he did – he did – What happened here? So he had a bunch of cases, and some of them from, you know, resisting a police officer, some of them from the DOI, and maybe three others or a bunch of other – he had a bunch of cases going on, right? And at some point, all five cases are up and there's this discussion about the jury and the defense counsel says the defendant has previously waived his right to a jury trial, but apparently the – what can I say? The actual jury trial waiver didn't list one of the cases. All the other cases were listed, but this one was not. And that case was never even called on the day that that jury waiver was effectuated. Correct. But was it set that day? On call? It may have been set. I'm not sure. I'd have to double-check the record. But it was never called and the jury waiver form doesn't reflect any waiver in that case. So it sounds a little bit like it was inadvertent or that it was – you know, no one picked up on the fact that of the five cases he had, one number – one case number was not listed? I think that's entirely possible. That's very possible that that's what happened, Your Honor. And then afterwards, every time the court would talk about it, he'd talk about there's been a waiver of all of these five cases, correct? That's correct up until a week later. A week later, October 25th, he says, I want my right to a jury trial on all these cases. They say, you waived. He explains why he waived on some of the other cases. But then the court rules. The court says, you're not getting your right to a jury trial. At that point – from that point on, he's in the exact same position as the defendant in People v. Scott. In People v. Scott, this Court found that there's no acquiescence if the defendant has a reasonable belief that the jury trial is no longer available. So when the court tells him the jury trial is no longer available, again, just a week, the very first time the DUI case is called after this purported waiver never happens, the very first time it's called, the judge says, you're not getting a jury trial. At that point, he's in the same position as the defendant in People v. Scott, and we cannot assume or infer any acquiescence or waiver. Kagan, what do you mean called? Wasn't it – wasn't a DUI case part of all five cases all through the – all the status hearings? They – not necessarily. Certainly, the misdemeanor – there was a misdemeanor resisting case that's unrelated to these cases completely. Was it before – were they all heard each time in front of one judge? I'm not sure. We can assume that they were. They may have all been set before the same judge. On certain days, they certainly were heard. I don't recall which judge sat on the different cases. But these cases were charged separately. Separate DUI, separate felony, and a bunch of TRs. But, yes, that's correct. And so, all right, we'll find out. Were they all five heard each time in front of the same judge? The judge saying, you've waived your right to a jury, we're going to set this for a bench trial, all of these cases. You're not sure if that's how it happened? I don't believe that they were always all set before the same judge. In my memory, there was a different judge seating at different times. I'd have to double-check that. But, again, Oliver insisted on his right to a jury trial so loudly and so often that on March, I believe March 18th or March of 2018, the court said, all right, we're going to pull the transcripts. We're going to find out what you waived and whether you waived. The court makes a written order for the transcripts, and then nothing else happens. They never actually pulled the transcripts to show that he didn't waive on the DUI case. So any silence after October 25th of 2017 puts him in the same position as the defendant and people be scoffed. And then when the court, and certainly after the court offers to pull the transcripts, we cannot assume. Again, he is insisting on his right to a jury trial up until the court tells him several times he can't have it. On October 10th of 2017, the trial court, the record of proceedings indicates that the trial court went through the felony charges against the defendant, informed him of those proceedings, and indicates two felony case numbers, right? And those, one was unrelated. That's, one was that resisting arrest. That's correct. And the other one is the obstruction of justice that relates to this DUI. Were the DUIs called as part of that hearing? On December 10th? On October 10th of 2017. On October 10th? I apologize. I just, I don't know what was called on October 10th. I know that on October 17th, the DUI case was never called. And that's the date that the waiver was entered on any cases, on these other two cases. So as far as whether it was called on October 10th when they went through the charges, I would have to double-check the record. I don't have that on top of my mind, unfortunately. I think it is the October 10th date when there is the execution of the DUI. I'm sorry. You're right. I apologize, Your Honor. My confusion. Yes, October 10th, only 16 CF-752, the resisting case, and 17 CF-405 were called on that date. And his waiver, what he executed, is for those two felony cases. That's correct. Now, the order has the other cases on it, correct? It does, yep. The judge did list all of the cases on the order. And again, including the DUI case, which she did not call that day. So it's my position that that was a scrivener's error, basically. The judge listed all the cases that this person had pending. But if the case isn't called, there's no proceedings that day. That's why there's no transcript for the DUI case on that day. Legally, it's a nullity if the case is never called. I'm not sure I, you know, is it terroir? What does that mean? Was it listed on a computer sheet of some sort? You're saying that the clerk listed it. You're saying that was a scrivener's error? The judge in the pretrial. The transcript of the clerk calling the name in the cases? I'm not sure I know what you mean by call. I apologize. Yes, Your Honor. When the judge calls the cases, this is People v. Hutt, 17 CF-405, et cetera. People present, defendant present. The Court has an obligation to call any case whose business is before it that day. The Court did not call the DT case. Now, when the Court recorded the pretrial order that day, saying not guilty, discovery is order, blah, blah, blah, the Court indicated that jury is waived on these cases. At the top of that order, the Court had included all of the cases that Mr. Hutt had before him, regardless of whether they were called that day, regardless of whether the proceedings were held that day, the Court listed all of those orders, excuse me, all of those cases, including 17 DT-51. So the Court entered an order. No, Your Honor. There's no conflict, because the written order reflects that the jury trial was waived. On that order, in the case caption, the judge had written all of the case numbers, including the DT. At the beginning of the hearing that day, though, the judge never called the DUI case. No written waiver of jury trial was tendered on the DUI case. Nothing happened on the DUI case. Again, that's why there was no transcripts in the DUI case on that day. The transcripts were all of the cases that the judge called that day. There were in the obstruction case, because that's the case that was called, and in the resisting case. Those transcripts were recorded for those cases because those are the cases that the judge called that day. We had to request the transcripts and consolidate the cases so that we'd have a full record of what happened on both cases. So it's our position that that is controlling. If the Court doesn't call the case, nothing happens on that case, especially if we enter a jury waiver that doesn't list that case. We cannot manufacture a waiver to jury trial. We can't infer any intent to waive jury on his part. Again, this is a very important right that can't be, I think, dispensed with accidentally or inferred. So, again, he was in the same position as the defendant, Peeble B. Scott. After he's told he can't have his right to a jury trial, no silence or acquiescence after October 25th can be read as an acquiescence to a bench trial. So he was denied his right to a jury trial, and this Court should reverse and remand just the DUI case for a new trial. The obstruction conviction in 17 CF-405 should also be vacated. His inaction in that case does not rise to the level of felony obstruction for a few reasons. The first is that Oliver's blood is not the type of physical evidence that can be concealed in the way the obstruction statute uses that word. Illinois courts and Peeble v. Elsperman had previously held that a defendant's entire body does not constitute physical evidence for a felony obstruction case. According to that case, someone who hides their entire person, and that was a DUI case. Somebody was running from the police and hiding, and the Court said that doesn't count as physical evidence. They said the legislature knows how to criminalize the hiding of one's person for the purposes of the resistance statute or for other sections of the obstruction statute. They didn't do so for the concealing evidence portion of that statute. So the best you can charge somebody with in that situation, when they're running and hiding from the police to hide their blood alcohol content, the best you can charge them with is resisting. That's a 1991 case. It's been cited. It's never been overturned. If we say that the blood inside of the body is different than the whole body, we get kind of an absurd result, because we end up with somebody who runs from the police, leads them on a dangerous chase. That person gets charged with resisting. A person who surrenders to the police peacefully and politely declines to give their blood is charged with felony obstruction. That can't be proportional there. So the language, excuse me, there's no reason to treat the blood inside of a person's body than their entire body. The appellate court, excuse me, Justice Kavanaugh in his dissent on this case, also showed how the language, the way we use the word concealment doesn't apply in this situation. To conceal a physical object, you have to move it from a state of viewability to hidden. I have a pen concealed in my pocket. It's concealed because this morning I took it from a state of viewability on my desk and put it into my pocket. That's what you have to do to have a concealed weapon, concealed drugs, any concealed evidence. You have to hide the evidence. Oliver took no action ever to hide the blood in his body. He never took it from a state of viewability to hidden. So we know the statute doesn't criminalize hiding the whole body. We know that criminalizing hiding somebody's blood would lead to kind of an absurd contradiction. What's different here? Well, the state might say there was a warrant in this case. A warrant was issued telling him that the police need to search his blood. Well, the warrant didn't command Oliver to do anything. There was no language directing Oliver to comply with the police, with the phlebotomist, anybody. The warrant didn't change his legal responsibilities or rights whatsoever. But even so, the existence of a warrant is not an element of this offense. The lack of a warrant was not a defense at Ellsperman. The existence of a warrant doesn't apply anywhere in the language of the statute. That leaves the state's only real argument to be policy arguments here. We want people to comply with these blood draws. But even those don't persuade. There's no coercive power to charge in somebody after the fact. We can't get people to comply with a blood draw by adding on a felony to their misdemeanor DUI the next day. The warrant, again, the warrant didn't tell him he'd be charged. The police didn't tell him they'd charge. The police said they wouldn't tell him he'd be charged with a felony. So, again, the policy is that it's dangerous. Well, the danger of that search, excuse me, is factored in by the court when they issue that warrant. It's dangerous to breach a house on a search warrant for a house. If the police say open up and you refuse, the police have a battering ram and say we don't want to cause damage to the door, it's dangerous for us to go in. That's the police's discretion. The warrant, if anything, moots Oliver's position on the situation whatsoever, makes his acceptance or resistance irrelevant. The warrant is only relevant for Fourth Amendment purposes. So one more issue on those policy arguments. The legislature has created a robust scheme on the implied consent law. Before we take away somebody's driver's license for a year, the courts or the police are required to tell them if you refuse this, all these things are going to happen. There has to be a clear explanation of the consequences. But we can throw somebody in prison for three years for refusing a blood draw without telling them that they can even be charged for it? That would, again, because there's no warrant requirement in the statute, that would swallow all DUI investigations in this State. Every, anybody who refuses blood, breath, or alcohol, whether there's a warrant or not, can be charged with concealing evidence. It would transform every DUI investigation with a refusal into a felony. If that's going to be the policy that needs to be handled down the road, the legislature needs to create that. So, again, there was no waiver of jury trial in the DUI case. Obstruction does not apply. Mr. Hutt asks this Court to remand for a new trial in the DUI case, vacate the obstruction charge completely. If there are no other questions, I'll see you in a moment. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Counsel, I'm Assistant Attorney General Mitchell Ness on behalf of the people of the State of Illinois. This Court should affirm defendants, both defendants' convictions, first for obstruction because he intentionally concealed his blood in an attempt to impede police's investigation into whether he was driving while drunk. This Court should similarly affirm defendants' DUI conviction because despite defendants' post-trial attestations and parsing of the record. Counsel, when you say he intentionally concealed his blood, let me ask, is concealing, refusing to have a phlebotomist draw your blood the same as withholding information? So defendant and the dissent below try to distinguish the two definitions this Court provided in homage for the word concealed. This Court said the second definition, which we all agree doesn't apply here, refers to the placing out of sight, the hiding, you know, making a physical act and hiding something. Everybody agrees that definition doesn't apply. The Court, though, provided a second definition of the word concealed. I'm asking you, do you think that refusing to have a phlebotomist draw your blood is the same as concealing information? So I do believe it's obstruction of justice because it's concealing evidence. Whether the defendant and the dissent below highlight this, they try to limit this first definition of concealment to information. I don't think that that's a plain reading of this Court's definition nor of the statute itself. So I would not limit it to the hiding of only information. You can hide. You can prevent disclosure of, avoid revelation of, and refrain from revealing physical evidence as well as information. Maybe we're not understanding the word hide and conceal in the same way. I think of the normal understanding of the word hide is to actively put the thing in a place where it can't be found. But your blood is already in your body. You're not hiding that. So I'm trying to figure out what your definition of concealing the evidence was when basically he didn't hide his blood. His blood was where it always was. Right. So this Court has said that the definition of conceal has essentially two separate elements. One is to hide, to place out of sight. The other is to prevent the disclosure of, to avoid the revelation of, and to refrain from revealing. That's the definition that the State suggests covers his conduct here. Well, I think he wouldn't have to disclose that he has blood. Everybody has blood. Right. So that wouldn't require any disclosure. So does that really apply? I do believe so, yeah, Your Honor. So the statute itself doesn't criminalize his desire to hide that he has blood. It criminalizes the person's desire to hide physical evidence or conceal physical evidence in this case. Isn't having the warrant, I mean, he can be compelled? I mean, the officers have the right to take that blood whether he consents or not. They absolutely do. So I think, as the appellate court said, and as many courts across the country have suggested, we essentially want to avoid that outcome at all costs. Well, they always would like full compliance, but avoiding that outcome doesn't negate the fact that by going into the trouble of going to get a warrant, they had the right to get that blood drawn. Yes, and that's And that might have meant that they had to restrain him, but they had the right to do so. Certainly, and that is an option that they chose not to do. Would it be different if it was, as counsel argued, they had a right to search a home and they knocked and they said, no, we're not letting you in? Would then it be reasonable to say, we're just going to charge you with obstruction because we don't want to break the door down or break a window? I mean, doesn't that sort of put the whole idea of going to get warrants and giving the police those tools to have the right to go and get certain pieces of evidence? Wouldn't it upend that? I think it highlights the unique nature of a blood draw and of the concealment with this case. I think if you could analogize to a home, my preferred analogy would be somebody hides or has drugs in a backpack. Police secure a warrant to search that backpack. And that person says, when served with the warrant, no, you cannot search that backpack. In that case, the police are just going to open the backpack. That's an enforcement mechanism that they have. In this case, there isn't a similar enforcement mechanism in that they could hold somebody down and draw their blood, but it's not similar in that it is significantly more dangerous to both the defendant and to a nurse and to a police officer conducting the act. And so while the enforcement mechanism available to a police officer in a normal search warrant of a backpack or of a home is to physically open the backpack or the home, there's no similar ability here short of forcing a blood draw. So in the classic sense of a backpack or a home, it's not obstruction of justice because it's not really a material impediment to the police's ability to conduct that search warrant. Here, it does constitute a material impediment because police don't want to put anybody at harm's way, the defendant, nurses, themselves. So it's just sort of the unique nature of the concealing of blood itself. Counsel, I'd like you to respond to Mr. Waller's comment that basically the state charged him with the wrong offense, that you could have charged him with obstruction and you didn't. And now you want to go back and basically fit a square peg into a round hole. He didn't use that term, but that's basically what he argued. How do you respond to that? Basically the state charged him with the wrong crime and now is trying to shoehorn the evidence to fit what they charged him with. I think his suggestion is more that the state charged him with a more serious offense than they could have charged him with. I think he suggests obstructing a police officer as a more appropriate offense in this case. I think that ultimately that determination is left to the legislature and within the plain meaning of the word obstruction of justice and conceal, if a person's conduct falls within the plain meaning, that's the crime that's been committed and that's the crime the state's allowed to charge somebody with. And so if his actions constitute concealment, as I suggest they do, this is obstruction of justice and the state's allowed to charge accordingly. That there are lesser offenses that they could charge with, I don't think this court has ever required, and certainly not as a method to deny what I think is the plain reading of a statute. Specific to this policy in Adams County, I believe, or the city of Quincy Police Department, this policy seems very odd that in a routine DUI that they aren't very compelled because they can charge a higher felony. Is that policy the same as if the blood draw is compelled because there's an accident involving death or injury where they have the right to take it? They just say, well, we'll just charge you with obstruction? I mean, I think that the purpose of gathering the evidence should be considered in terms of this policy and whether or not, you know, getting a warrant that compels somebody then still gives them the right to refuse. I guess I'm just really struggling with that. Yeah, there was little testimony about what the policy is. It was just an officer saying that as a police department, we have chosen not to draw blood in these situations. It's not clear how far that extends, whether they would refuse to draw blood if they were investigating a murder, for instance, or any of those things. He simply just testified that they don't draw blood in these instances. Now, I think as far as a – that's their chosen policy. They don't have to do that. This Court has said that they do not have to do that, that they can force a blood draw. I think Devan and I would both agree that, you know, we want to discourage forced blood draws in some situations, and this is a method to help police discourage forced blood draws by encouraging them to comply with a warrant when it's validly issued. Your colleague pointed out that retroactively encouragement – retroactive encouragement by charging him with something, with an increased felony, is defeating the purpose. How do you respond to that? Yeah, I believe he said that there's no course of power because the charge would come after the crime, and if that were the case, we wouldn't have an obstruction of justice statute. The obstruction of justice statute is not meant to just encourage compliance for a given defendant. It's meant to encourage compliance with people moving forward. Once, you know, everyone knows that you can obstruct justice by, you know, concealing, lying, whatever. The fact that you're not told that before you do it doesn't mean you didn't obstruct justice, and so that there was no potentially coercive effect for him doesn't mean that there's no coercive effect in allowing a felony – or allowing this to be charged as obstruction of justice because it would encourage compliance moving forward. You know, we don't – we don't require police officers to tell people that they're not allowed to lie about their name in order for someone to be charged with obstruction of justice. It's simply if someone lies about their name and if it materially impedes investigation, it becomes obstruction of justice. Now, what was your answer to my question about the charge as opposed to charging him with obstructing a peace officer? You upped the charge to obstruction of justice. What was the reason? I don't – I don't think I got what you said. Right. So the plain meaning of the statute, as I argue, covers – and the plain meaning of the word concealed covers his conduct. And so therefore, the charge is an appropriate one. It's, you know, the shoe fits kind of that his – the conduct he did was obstruction of justice. And so it's an appropriate charge. I don't believe, given that this is a statutory interpretation case, that this Court should be limiting or – yeah, limiting the plain meaning of the statute simply because there is a lesser offense that could have been charged. Is there a dispute about the plain meaning of this concealment, what it means? There is – the definition as provided by this Court is accepted by both of us. Defendant further desires to limit that definition by saying one of the definitions this Court provided relies on or pertains only to the hiding of information. So the plain meaning of the word itself is defined by this Court. No one disagrees with that. It's sort of the interpretation of the definition itself that would be at issue here. And I would suggest that limiting it to – limiting that first definition that the Court used in Comage to only information not only takes away from the plain meaning of the word, it also conflicts with the purposes of the statute itself. You know, we could use two, three, four, or five definitions, you know, in order to define any one word. This Court has already given us the definition, though, and the attempt to use two or three other definitions to redefine the Court's given definition, I think, takes us too far away from the plain meaning of the statute. I have an obstruction. We know that now you have to show that it's a material impediment. When you have the right to get this blood dry, even if it involves holding them down and strapping them down, and you choose not to because your policy is that we don't do that, is that on the defendant? So that would go into this Court's larger current interpretation of the obstruction of justice statute and what exactly a material impediment consists of. I would say yes. I would say it is more than a de minimis impediment into the officer's ability to do something. Because one of the main factors that this Court and the appellate courts have highlighted since the material impediment requirement has been introduced is officer safety. And if the action you do causes officers to potentially put themselves in harm's way, that can constitute an impediment. So while yesterday's case was about the amount of time an impediment existed, this case would potentially impediment arises not only because he ultimately did succeed in refusing to give up his blood. They did not give his blood and introduce it at trial. Had they done so, it could also constitute an impediment because he would have been putting them in harm's way. So I think that's where the impediment half would consist of. Like I said, briefly on defendant's warrant argument before moving to the DUI charge. I think the defendant misunderstands the purpose of the warrant. As I highlighted in my brief, this warrant was written exactly with what the legislature has said a warrant should be written with. Warrants are directed to police officers. They are essentially a pre-authorized judicial authority for an officer to conduct an act. And that's exactly how this warrant was written. It was written to officers of the state, and it allowed them to take his blood. Warrants are not written for individuals to agree or disagree with the action that the police is attempting to do. We don't allow individuals to look at a warrant and say, no, thank you, I'm not going to comply. If there is a remedy for a warrant that's written poorly, you challenge that later in court. And I would note the defendant did not challenge the warrant in this case. Afterwards, he simply says that, well, maybe it wasn't really directed to him, and therefore maybe he didn't actually disagree with something. I would finally point out that, of course, as the defendant says, the warrant requirement is not a part of the obstruction of justice statute. You don't need to refuse to comply with a warrant to commit obstruction of justice. In most cases, there will not be a warrant before an obstruction of justice charge is levied because, of course, the obstructionary act is just, in the case of a normal police interaction where they're investigating a crime and someone has destroyed evidence or concealed evidence once the police arrive. So the warrant, of course, is not a requirement itself. Nor do I think that the fact that the warrant wasn't written to Mr. Hutt has anything to do with whether he obstructed justice because he obstructed justice by failing to comply with a lawful order. I'd turn briefly to the DUI and the jury waiver issue unless there's further questions on the obstruction charge. And I'd start by answering Justice Cunningham's question, which is, doesn't he have, didn't Mr. Hutt have a, the ability, didn't he have the, shouldn't he have objected before his case went to a best trial? And the answer is no, unless your attorney has repeatedly told the court that you desire a bench trial. And so while, yes, technically he does not need to speak up before a bench trial is held, that's only in the case where no one has ever discussed the idea of a jury trial or a bench trial. But that's not what happened here. This court's case law is very clear that counsel is allowed to inform the court about a defendant's decision to waive a jury trial. And that's what happened here repeatedly. So his silence in this case did mean something. And in Frey, which I would point to, and I think is relatively indistinguishable to this case, in Frey what happened is the defendant was charged with two reckless homicide counts. At that point, his counsel, and I think it was just put in the record, but his counsel and he waived his right to a jury trial on those reckless homicide counts. Subsequently to the explicit waiver, the charges were amended to include a DUI offense. After that point, there was no waiver. There was no explicit waiver. Instead, the counsel and the court continued to move forward as if a bench trial was happening because that's what happened, because that's what they desired to do. And this court said that the fact that the defendant sat there, understood that a bench trial, that they were talking about going to a bench trial for all of his cases, and never said anything, along with his counsel's representations that a bench trial was desired, was a sufficient waiver in that case to show that he had knowingly and I think that's exactly what happened here. I don't, the state does not believe that he waived his right to a jury trial on the DUI charge on October 10th when he executed the written waiver for two of the cases. I believe that was a sort of, it had to do with the plea negotiation. It was sort of, I would say choppy at best, but that's, I'm not, I don't believe that that's where his waiver for the DUI charge came from. His waiver from the DUI charge came from the next three hearings at which the court explicitly called all cases. The records exist for both cases, and the defendant's counsel repeatedly told the court that he desired a bench trial, that he had waived in all of those cases that were being discussed, and then they went forward as if that was the case. On the morning of trial, the court said we're here today for a bench on all these cases, and the defendant said we are ready for trial, or the defendant's counsel said we are ready for trial. The fact that the defendant did not speak up ever to protest that is, is relevant in this case. I'll just also correct the record slightly on two of the defendant's representations here. So he, the defendant suggests that he protested pretrial to his, to his jury trial. That's not necessarily true. On October 25th, what he told the court was, I waived my right to a jury trial because they were going to make my wife testify, and because they have, they were going to increase the sentencing. He didn't say, so I didn't actually want to. What he said was, I did this because of these coercive effects, and of course that happens in plea deals all the time. People don't want to plead guilty to crimes, but they do because it makes sense for them. So the fact that he suggested that he was, didn't love the idea that he waived his right to a jury trial doesn't mean that he didn't mean to waive his right to a jury trial. And the second instance came through defendant's counsel, not defendant himself, and defendant's counsel said, in explicit reference to the obstruction charge, he said that defendant still believes he has a right to a jury trial in that case. And so there's nothing in this record that suggests that he didn't want to have a bench trial for his DUI charge. He may have been uncomfortable with a bench trial for all of them. He may have not wanted that, but that's not in this record. If defendant suggests that his counsel overruled his desire to have a jury trial in his DUI case, I think that's something he can raise on a PC petition where he can allege that he actually indeed wanted a jury trial in his DUI case. And then the final thing, defendant points, back to concealment, defendant points to Ellsperman for the idea that, you know, physical evidence in your body and your blood. One, I would say Ellsperman is obviously not controlling on this court. It was an appellate court case that this court can take notice of. However, the Ellsperman, what the Ellsperman court said is that a person did not obstruct justice because your body as a whole is not physical evidence. That's not this case. I don't think there's any real contesting that blood itself is physical evidence. So it's just this, it's a different charge. That's why the charge didn't fit in that case. Thank you very much. Yeah. Thank you. If I can reply just briefly to some of the points, Mr. Ness, can you respond to Mr. Ness' hearing when your client specifically said, I waived my right to a jury because they were going to make my wife testify? And at that hearing, I believe the judge was referring to all of these pending cases. Can you respond to that? Your Honor, he does say, I waived my right because my, they wanted my wife to testify against me. That's in that resisting case. That's in the unrelated felony. At the hearing, though, they were talking about all five cases. And there was a conversation about these cases going to trial, and the judge was asking the defendant, as well as his counsel, and the defendant, quote, said, I waived a jury trial. I don't believe that there's exact, I don't believe that there's, Your Honor, explicit evidence they were talking about all five cases or that all five cases were in anybody's mind while that conversation was happening. Certainly, it certainly appears, based on the comments he said about extended term eligibility on the obstruction case and his wife testifying against him in the misdemeanor case, certainly those were on his mind. And he said, that's why I waived on those cases. In the context in which this was said, they were talking about all five cases. Your Honor, we could certainly, we could certainly, that would be a reasonable inference. But I don't believe that something as fundamental as a jury waiver should be handled by that type of, we kind of think maybe because they were talking about these other things, maybe they were talking about anything. A jury waiver needs to be explicit, either by him or, as in Fray, by his attorney. We can't infer. On something as fundamental as a right to a jury trial, the tie goes to the runner here. If we can't tell that he explicitly waived his jury trial right, he didn't waive his jury trial right. That right still exists. So that would be my response to that. The record is unclear. I absolutely agree. The record is unclear what they were talking about. Since we don't know, there was no legal waiver. Kagan. But just for one second, kind of make sure we're in the right framework. Sure. This is an ineffective assistance of counsel claim, correct? No one raised any of this. Everybody just kept talking. There were five cases. They're talking about jury trials. They're talking about jury waiver. They're talking about bench trials. None of this happened in the trial court, correct? This is only an ineffective assistance of counsel claim. Is that correct? Yeah. We claim that he, that counsel was ineffective for repeatedly representing a jury waiver that never occurred. I believe the court was also aired. How do you show prejudice in that framework? Well, prejudice in this setting, we look at ineffective assistance of counsel for, for example, misadvising on a plea. You have to show that you would have taken the case to jury trial. I think the same analysis can be used here. And he demonstrates that he, I mean he kind of demonstrates that he wants a jury trial on all these cases repeatedly. So if prejudice would be that the, the misconduct of the lawyer is that he did not make, object or whatever when the trial court said there's been a jury waiver here. So then you'd have to show prejudice, correct? That were it not for the conduct of the attorney, that what, he would have asked for a jury trial? Is that how we look at prejudice in this situation? Yes, Your Honor. I mean, very directly. Absolutely. And counsel doesn't. How do you show that? That he would have chosen a jury trial had something else happened during this? Well, we see repeatedly that he continues to ask for jury trial on all of the cases. So it's clear after October 21st and, October 25th and March of 2018, he's still asking for his jury trial. That's why the court offers to pull the transcripts. And what happened in the DUI case? What was the evidence in the DUI case? In other words, would there be a different result? That he had a jury trial. I'm sorry, I couldn't hear you. What was the evidence in the DUI case? What was the evidence in the DUI case? There was an accident. A woman was looking out her window, observed an accident, saw what was later determined to be the defendant, step out, stumble around, there were signs of impairment, and then he was on somebody else's porch. And there was evidence that he may have been intoxicated. But there was no blood. May have been intoxicated? Was there more evidence about that? I'm sorry? Was there any evidence that he was intoxicated? Well, I think other than the accident and the officer's observations when they arrested him, I believe that that was the evidence that they relied upon. That's pretty close then. I believe it is a very close case. That's correct. And so the case should be, I mean, the case should be reviewed for plain error as well. Did you raise that in your brief? If I can review my brief very briefly. That's all right, sir. We will review your brief to see if these are arguments that you made before. Thank you. On the to talk briefly about the obstruction case, I agree with counsel that the warrant, I mean, I believe counsel basically stipulated the warrant doesn't matter. I agree that the warrant was issued in the nature that the legislature intends. That's evidence that the legislature didn't intend this type of prosecution to come from a refusal for a blood draw. Again, if the warrant doesn't matter, then every refusal to blow or give blood or urine would be an obstruction of justice case. The legislature has created this carefully balanced scheme saying, you have your right to bodily autonomy, but if you want to insist on that right to bodily autonomy, we're going to take away your right to drive for a year. That's the balance that they've struck. If we come in and say, well, the police can also charge you with a felony and throw you in prison for three years, that completely upends the entire scheme that the legislature laid out. So it, and if the warrant does matter, then we need to come up with a bunch of elements. We need to say whether the, exactly what the warrant orders, whether the warrant orders him to do anything, and exactly what point a refusal occurred. All of that's kind of up in the air because, as the Justice indicated, this is a square peg in a round hole. If anything, it should have been brought as recessing, and there, and he should have been able to defend on the elements of that case. So I do disagree somewhat that we are asking this Court to cherry pick definitions of, of obstruction, excuse me, definitions of concealment from Comage and the dictionaries. All of these definitions are, are, agree with each other. A physical object is concealed if it has been concealed. Now, we say there's some looseness around things like thoughts, ideas, emotions. Those can never be moved from a state of visibility. So we say he concealed his thoughts. But if we're talking about anything physical, his body, his blood, my pen, a set of drugs, a gun and a nightclub, those are things that have been, there's been an active step to be concealed. That didn't happen in this case, so that charge should absolutely be vacated outright. And again, we ask the DUI case be remanded for a new trial. Thank you. Thank you very much, Counsel. This case, which is agenda number 10, 128170, People of the State of Illinois v. Oliver Hutt, is taken under advisement.